WILLIAM G. BRYAN *et al.*

*vs.*

REBECCA P. MILBY.

Kent, Sept. T., 1890.

*Will; obligatory trust created by will.*

No obligatory trust is created by a will giving all of testator's estate to his wife with a request that if she does not require the whole of it as a support, she will, at her death, will the remainder to certain other persons named.

BILL FILED IN KENT COUNTY.—This bill was filed by the children of Charles A. Bryan to establish a trust in ·certain money alleged to have been loaned to defendant by Mary R. Bryan, deceased, and to recover such money for the benefit of complainants, the alleged *cestuis que .trustent.* The case sufficiently appears in the opinion.

*J. Alexander Fulton,* for the complainants :

Precatory words in a will create a trust. But the objects of the bounty must be sufficiently described, and the property sufficiently defined. 2 Bouvier, L. Dict. .364.

This is the doctrine of the courts, stated in its briefest form, by our lexicographers. These are to be received :as authority to this extent, that they are supposed to give true definitions as announced by the courts and to be received and acted upon by the bar.

We have it stated more at large in the text-books. By .a very eminent writer, universally recognized as an authority of the highest repute, it is stated in these words : ·" It has long been settled that words of recommendation, request, entreaty, wish or expectation, addressed to a ·devisee or legatee make him a trustee for the person or

persons in whose favor such expressions are used, provided the testator has pointed out, with sufficient clearness and certainty, both the subject-matter and the object or objects of the intended trust." 1 Jarman, Wills, 2d Am. ed. 1849, 332; Little & Brown's ed. 1881, p. 385.

*Judge* Story states the rule thus: " In the interpretation of the language of wills also, courts of equity have gone great lengths, by creating implied or constructive trusts from mere recommendatory and precatory words of the testator. Thus, if a testator should by his will desire his executor to give to a particular person a certain sum of money, it would be construed to be a legacy; although the will should leave it to the executor's own free will, how and when, and in what manner, it should be paid." 2 Story, Eq. 2d ed. § 1068.

This, then, is the rule as laid down in the lexicons and in the text-books, both English and American. It seems to be founded in reason and equity. It is the one we invoke and insist upon in the case now before the court, and for the first time in our judicial history. If it is not just in itself, and suited to our condition, the burden of showing this rests with the respondent.

I shall now attempt to show that the complainants are within the rule, as thus defined, and this I shall do both by the terms of the will itself, and by the authorities I shall cite in illustration of the rule and its application.

Now as to the terms of the will.

And first as to its intent.

This is to be ascertained from the will itself, aided by the surrounding circumstances. From the will; first, by the precatory words themselves; and secondly, by the contest. The will is both short and clear, and we shall not have much difficulty in arriving at the true intent of the testator if we keep it before us. The precatory

words are, " And I do *request* my wife, if she shall not. *require* the whole of my real estate.*as a support,* that. she will will at her death the remainder to the children of my brother Charles Bryan, of Cecil County, Maryland."

From these words it is plain that the testator had two objects of his bounty in view. The first was his wife;. and the first and principal provision was for her support as long as she lived. From the very nature of the case this must be uncertain. She might live a long or a short time. If she retained her good health, she would require less than if stricken by disease. But whatever the circumstances might be, she was to be supported out of his estate, even if it took the whole. But it was only support. No provision was made for anything else. She might not waste it, she might not spend it for other purposes; she must not give it to strangers, for by so doing the second purpose and intent of the testator would be defeated, namely, the provision for his brother Charles' children. In other words he says: " My wife is to be supported, even if it should take the whole of my estate to do so; but whatever is not required for this purpose, goes to my brother Charles' children." This is the clause. of the will that contains the precatory words, and makes. provision for these children. I contend that even taken alone they clearly show the intent of the testator to provide for them after the support of his wife had been secured. But this conclusion is greatly strengthened, indeed placed beyond doubt, when we come to consider the context of this will. In the first place the estate, both real and personal, is given to his wife, Mary R. Bryan. And observe here, that although the bulk of it was real, yet no words of inheritance are used. It may be argued that these were not necessary to convey the. fee, yet their omission is a noticeable fact when we come.

to seek for the intent of the testator. But it is not even necessary to insist upon this interpretation, reasonable and natural as it seems to be; for the subsequent words, following immediately in the same sentence, seem to leave no doubt about the testator's intent, and show clearly that his wife was not to take an absolute estate, without any limit or restriction as to how and for what purpose it should be spent. The words that limit and restrict her to the use and application of the estate are these: "And I do hereby authorize and direct my executor hereinafter named to sell my real estate, as soon as it can be sold to advantage, and to invest the money in good stocks or bonds." If we consider carefully the language here used we surely cannot fail to see that the interest in the estate given Mrs. Bryan was not an absolute and unqualified one but one limited and confined to a single purpose, her own support. The words here used by the testator are not words of suggestion, desire, or wish, or even advice; but of command and direction. The first are, "I do hereby authorize and direct." They are most positive and imperative, and in the present tense. There is no uncertainty or contingency of any kind. If the previous gift was an absolute one of the whole interest in the entire property, what need or propriety could there be in authorizing her to do what she already had the absolute right and power to do? To authorize is to grant a power and confer an authority not before possessed. To direct is to say how a thing shall be done. But it would be folly to address such words to a person who already had the authority to act according to his own free will as it is contended here that Mrs. Bryan had, and which would be true if she had taken an absolute interest by the preceding clause of the same sentence. But this is not all the direction the testator had to give regarding his property. In the same sentence he goes

on to say what shall be done with the proceeds after his estate has been converted into ready money.

He further "authorizes and directs" her "to invest the money in good stocks or bonds." If he had already given it her absolutely there would be neither propriety nor sense in using such language.

Again, "if she shall not require the whole of my estate as a support," he requests her to will it to the children of his brother Charles. What is the meaning of the word "require" as used here? It excludes the idea of an unqualified estate and unlimited control and discretion, and manifests a clear intention to limit the use while she lived and direct the disposal of the remainder at her death.

From the foregoing considerations it is plain that the intent of the testator was to provide for the support of his widow during life, and that whatever remained at her death should go to the children of his brother Charles, the complainants here. The testator had no children of his own.

If this be the intent of the testator, it should end the controversy; for it is a cardinal principle, recognized and declared by all courts, that in the construction of wills, the intention of the testator is the first object of inquiry, and when found, that it must be fully carried out, and control the disposition of the estate.

The principle that precatory words, when used in a will, are imperative, and must be so regarded, has long been established. The reason of the rule has already been stated. It is that the testator, having full power over his estate, to dispose of it as he pleases, need not express his will in the stern and imperious language of a master, addressing an inferior, but may rather employ the gentler phrase of courtesy as addressing a friend and equal, whose pleasure it will be to carry out his wishes,

even after he has departed. Recognizing the principle and its propriety, the courts in England at a very early day so declared, and since have uniformly held, " that words of recommendation, request, entreaty, wish, or expectation, addressed to a devisee or legatee, will make him a trustee for the person or persons in whose favor such expressions are used, provided the testator has pointed out with sufficient clearness and certainty both the subject-matter and the object or objects of the intended trusts." The same principle has been adopted, and the same rule followed, with a few exceptions only, in this country.

A host of authorities, both English and American, might be cited ; but it would be almost an endless task without any corresponding profit. The difficulty arising in the numerous cases has not been in regard to the principle, for that has been acknowledged over and over again to be settled, but in its application to the special facts, or circumstances of each case ; and the question in almost every instance has been as to the certainty of the subject or the object.

On this point there has arisen some diversity of views among the judges, as was very natural and to be expected. Some have been more strict than others ; but the main current of the decisions has flowed on in one strong, uniform, and unbroken stream ; and the rule on this question of certainty has· been, that where the object and the subject can be discovered from the will itself, or the will and surrounding circumstances ; or where the court, by the exercise of its usual powers and functions can ascertain the subject of the gift and the persons to be benefited,—the trust shall not fail because of uncertainty.

Without dwelling longer upon this point, we respectfully cite the court to the following authorities. An examination of these will clearly show that our case

comes within both their letter and spirit. 1 Jarman, Wills, 2d Am. ed. 332; 2 Story, Eq. § 1068; *Malim* v. *Keigeley,* 2 Ves. Jr. 333; *Wilson* v. *Major,* 11 Ves. Jr. 205; *Wright* v. *Atkyns,* 17 Ves. Jr. 255; *Parsons* v. *Baker,* 18 Ves. Jr. 476; *Briggs* v. *Penny,* 8 Eng. L. & Eq. 231; *Coates' App.* 2 Pa. 129; *McKonkey's App.* 13 Pa. 253; *Pennock's Estate,* 20 Pa. 268, 59 Am. Dec. 718; *Ingram* v. *Fraley,* 29 Ga. 553; *Henderson* v. *Blackburn,* 104 Ill. 227, 44 Am. Rep. 780; *Bull* v. *Bull,* 8 Conn. 48, 20 Am. Dec. 86; *Hall* v. *Otis,* 71 Me. 326.

Even if the chancellor should have any doubt of the correctness of the principle here contended for or the propriety of its application in this State, it should be resolved in favor of the complainants upon these considerations: This is a Virginia case. The testator was domiciled there at the time of his death. The will was proved there. The estate was there. Now the rule in such cases is that the law of the testator's domicil shall direct the course of distribution. Williams on Executors, 366, states: "It is now a clearly established rule that the law of the country in which the deceased was domiciled at the time of his death not only decides the course of distribution or succession as to personalty, but regulates the decision as to what constitutes the last will without regard to the place either of birth or death, or the situation of the property at that time."

The rule above contended for is the one adopted and acted upon in Virginia. *Harrison* v. *Harrison,* 2 Gratt. 1, 44 Am. Dec. 365.

*Nathaniel B. Smithers, Sr.,* for the defendant:

Whether or no there was any trust created depends upon the proper construction of the will of the testator.

The proper construction is :

1. That the bequest to Mary R. Bryan was of the

whole estate of the testator, subject only to the payment
of his debts.

2. That by the direction to sell, the real estate was
converted into personalty and as such passed to the
widow.

3. That the terms of the bequest being unlimited, the
residue, after payment of debts, passed to her as an ab-
solute gift.

4. The absolute nature of the gift is more clearly indi-
cated by the clause directing that no security should be
given by her, as executrix, nor any appraisement be
made of his estate.

5. That Mary R. Bryan had the power and right to
spend any part or all of the residue so given and whether
she did so or not was a matter wholly within her discre-
tion.

6. That there was no bequest by the testator to the
children of his brother, nor any benefit directly con-
ferred,—but if anything was to come to them it was to
be wholly by and through the will of Mary R. Bryan,—
to be made in pursuance of the testator's request, and the
subject to be contingent upon whether anything should
be left of that which had been bequeathed to her.

Such being the proper construction of the will of Wil-
liam A. Bryan, the defendant rests upon this well-estab-
lished principle,—that whenever a bequest is made in
terms importing an absolute gift, precatory words will
never be construed as creating a trust, if either they
ought not upon the whole will to be considered as im-
perative, or if the subject-matter of the request be un-
certain, or if the objects intended to be benefited be not
clearly ascertained—and all these three requisites must
co-exist. And if in any gift there is manifest an inten-
tion to give to the devisee a right or power to dispose of
the property so given, and by using such right to leave
more or less or nothing upon which such trust would

operate, then such precatory words will never be con-
strued as imperative.

This principle is found in Lewin, Tr. 134, and *Hard-
ing* v. *Glynn*, 1 Atk. 469, 2 Lead. Cas. Eq. 4th Am. ed.
1079–1082, 1086, 1087.

I now propose to examine whether this principle is
sustained by adjudicated cases.

*Bland* v. *Bland*, 2 Cox, Ch. 349, decided by *Lord*
Hardwicke in 1745, though there are a few cases preced-
ing this, is the first leading authority. It arose upon a
clause in the will of Lady Ann Bland, who after devising
certain real and personal estate to her son, Sir John
Bland, absolutely, adds: " And it is my earnest request
to my son, that on failure of issue of his body he will
sometime in his lifetime, either by will or other writing,
settle the said premises or so much thereof as he shall
stand seised of at the time of his decease, so and in such
manner as that on failure of issue of his body the same
may come to my daughter Mrs. Jacob and the heirs of
her body."

It was urged that this request was a direction to settle
and was imperative, but it was ruled by the Chancellor
that it was not, but that the estate being given abso-
lutely, he had power to dispose of the same, and as the
request only affected so much as he should stand seised
of at his death, it was as much as if the testatrix had said,
" I leave you to dispose of as you think fit, but I shall be
glad if you will give as much as you can spare, so and
so."

In the course of his opinion the chancellor quotes the
previous case of *Atty-Gen.* v. *Hall*, Fitzg. 314, decided
in 1735, which arose upon the will of Thomas Hall, in
which he gave to his son Francis and the heirs of his
body all his personal estate, but if Francis should depart
this life leaving no heirs of his body, then he gave so
much as his son should be possessed of at the time of his

death to the Corporation of Goldsmiths upon trust for charities.

Francis died and bill was filed by the attorney-general to have the estate applied to charities. It was held that the bequest did not take place, and the opinion was founded upon the clause " so much thereof as he shall be possessed of at the time of his death," which imported that his son should have the clear property.

After applying this, the chancellor proceeds in relation to the case before him. " She," Mrs. Bland, " takes it for granted from his having the fee that he could sell and dispose of it as he pleased, and therefore she requests, and by the whole framing of the will this request is subject to his, John Bland's, direction. I do not lay it down that in a will a request may not amount to a legacy, but it should be limited to some certain thing or for some certain part of a thing and not left absolutely to the pleasure of the person to whom the request is made."

Nothing could be more applicable to describe the will of William A. Bryan. His widow took his whole estate absolutely. She had power to expend the whole,—it was entirely at her pleasure whether anything should be left, —if anything should be left he requested that she would bequeath as he desired, but the whole subject-matter was committed to her discretion.

I have cited this case at length, not only on account of the eminence of the judge, but as the leading case universally cited and followed.

*Wynne* v. *Hawkins*, 1 Bro. Ch. 179 (*Lord* Thurlow), 1782, devises to testator's wife " not doubting but that she will dispose of what shall be left at her death to our two grandchildren" not sufficiently certain to raise a trust.

It was argued for the plaintiff, a grandchild, against the personal representative of the wife who had died intestate that by force of the words " not doubting" there was a trust.

For the defendant *Bland* v. *Bland* was cited and the chancellor dismissed the bill, saying in the course of his opinion : " If a bill had been filed in the lifetime of the wife could I have ordered the money laid out and that she should receive the interest for her life and then that it should go over. If the intention is clear what was to be given and to whom, I should think the words ' not doubting' would be strong enough. But where in point of context it is uncertain what property was to be given and to whom, the words are not sufficient, because it is doubtful what is the confidence which the testator has reposed. Here he looked upon the provision made by the father of the grandchildren as an ample provision, and meant this fortune to pass through the pleasure of his wife, leaving it to her to use what she pleased and consequently to make the residue such as she chose."

The principle of the decision was the want of certainty in the subject-matter. The *request* having reference only to what might be left at the death of the first devisee. In this it is precisely similar to the will of William A. Bryan.

*Pierson* v. *Garnet*, 2 Bro. Ch. 38, 226, Lloyd Kenyon, *M. R.*, 1786, on appeal, *Lord* Thurlow, *Ld. Ch.* 1787, was thoroughly argued. The decisions, both above and below, were in favor of a trust, but the principle of the preceding cases is maintained and the difference illustrated.

The question arose under the will of John Garnet, Bishop of Clogher, who by his will gave to Samuel Salt in trust to pay certain annuities and subject thereto to permit and suffer Peter Pierson, the complainant, to receive the whole of the residue of the proceeds, interest and profits of the said fund to be placed out at interest after the payment of the said annuities for and during his natural life and from and after the death of the annuitants I bequeath the said residue to the said Peter

Pierson, his executors, administrators, and assigns, and it is my dying request to the said Peter Pierson that if he shall die without leaving issue living at his death, that the said Peter Pierson do dispose of what fortune he shall receive under this my will to and among the descendants of my late aunt Anne Coppinger, his grandmother, in such manner and proportion as he shall think proper."

The question was whether these words were recommendatory or imperative and raised a trust for the descendants of Anne Coppinger.

Now it will be observed, and was admitted, that the gift itself was certain being of the whole of "what fortune he should receive under this my will," and the contest was whether the *objects* were sufficiently marked by the words "the descendants of my late aunt Anne Coppinger."

Inasmuch as the question could not properly arise until the death of Peter Pierson without issue living, the Master was disinclined to consider the matter, but being pressed, yielded and ruled that the words created a trust, and in the course of his opinion says: "The principles appear to be those recognized by *Lord* Thurlow in the cases of *Harland* v. *Trigg*, 1 Bro. Ch. 142, and *Wynne* v. *Hawkins*, Id. 179, that where the property to be given is certain, and the objects to whom it is given are certain, there a trust is to be created." *Bland* v. *Bland* having been cited, his Honor observed in regard to it: "The property was not certain, being the whole of what he should be seised of at his death and leaving him an absolute control over the property during his life," and in reference to *Le Maître* v. *Bannister*, where the words were, "to do justice to A. and her children, but if any circumstances should occur to make it necessary, the devisee was to be at liberty to dispose of it,"

the judge said: "There one of the circumstances was wanting, for the devisee could dispose during his life,"— thus recognizing the distinction already established that if there was power to diminish or destroy the fund there could be no trust.

On appeal the decision was affirmed by Thurlow, *Ld. Ch.* (p. 230), who says: "In this case the devisee only takes an estate for life in the produce of the fund. The intention of the testator was that if he had children he should take an absolute power of disposal; if not it should go to the descendants of his aunt."

Having thus determined that Peter Pierson had no power to appropriate any part of the principal and that the words "descendants of Anne Coppinger" constituted a sufficient description, the two requisites of certainty of subject and object were present.

The case of *Sprange* v. *Barnard*, 2 Bro. Ch. 585, Rolls, Lloyd Kenyon, 1789, occurring within two years, and decided by the same judge, not only confirms *Bland* v. *Bland*, *Le Maitre* v. *Bannister*, and *Wynne* v. *Hawkins*, but shows that *Pierson* v. *Garnet* was in entire accord with the principle thereby established.

The words of the will made in execution of a power were: "This is my last will and testament at my death for my husband Thomas Sprange, to bewill to him the sum of £300 which is now in the joint-stock annuities for his own sole use; and at his death the remaining part of what is left that he does not want for his own wants and use to be divided between my brother John Crapps, my sister Wickenden and my sister Barden, to be equally divided between them."

The stock was standing in the name of trustees. The wife died and Sprange, the husband, applied for a transfer of the stock, claiming it absolutely. The trustees refused. The bill was filed by Sprange, and all in inter-

est made parties. It was contended for those in remain-der that Sprange was only intended to take for life—that there was a trust—and that the property should be im-pounded.

The master of the rolls says : " It is contended for the persons to whom it is given in remainder that he shall only have it for life and that the words are strictly man-datory on him to dispose of it in a certain way, but it is only to dispose of what he has no occasion for ; therefore the question is whether he may not call for the whole, and it seems to me perfectly clear on all the authorities that he may. I agree with the doctrine in *Pierson* v. *Garnet*, following the cases of *Harland* v. *Trigg*, and *Wynne* v. *Hawkins*, that the property and the person to whom it is to be given must be certain, in order to raise a trust. Now here the property is wasting, as it is only what shall remain at his death. The cases are so much in point that they are scarce worth mentioning ; they are *Bland* v. *Bland*, *Le Maitre* v. *Bannister*, *Wynne* v. *Hawkins*, where not doubting would have been sufficient to have raised the trust had it not been for the uncer-tainty of the following words. . . . Then the pres-ent case is ' so much as he shall not want for his wants.' It is contended that the court ought to impound the property ; but it appears to me to be a trust which would be impossible to be executed. I must therefore declare him to be absolutely entitled to the £300 and decree it to be transferred to him."

In this bequest the words were " the remaining part of what is left that he does not want for his own wants and use "—in the will of William A. Bryan the request is " if she shall not require the whole of my estate as a sup-port that she will will at her death the remainder."

Comment is unnecessary to show the identical charac-ter of the bequests—that in each case the property was

wasting and uncertain, and wholly dependent upon the devisee whether there would be much or little or anything to form the subject of a trust.

In *Malim* v. *Keighley*, 2 Ves. Jr. 333, 529, before *Sir* Richard Pepper Arden, *M. R.*, affirmed *Lord* Alvanley, 1794, *Lord Chancellor* Loughborough, 1795 ; the trust was established, both below and on appeal. The question arose on the will of Thomas Lowe, who after bequests to his daughters severally for life, with provisions for sinking the shares of such as should die without children into the residue, and giving the residue in three parts and with proviso : " In case the whole of the residue of my personal estate shall become vested in any one of my said daughters, then I do give and bequeath the same " (after the determination of the trusts) " unto such surviving daughter, her executors and administrators, hereby recommending it to such daughter to dispose of the same after her own death, and the determination of the several trusts aforesaid unto and among the children of my said daughter Anne Malim and my nephew, John Lowe, of Ferry Bridge, desiring that his reputed daughter Emilia, though born before marriage, may be considered as one of his children."

The whole residue became vested in Sarah, one of the testator's daughters, who married Keighley, and she dying without issue and intestate, the question was whether there was a trust for the children of Anne Malim and John Lowe.

Now by recurring to the terms of the bequest it will be observed that the recommendation covered the whole of the property received from the testator, and that there was no power in the legatee to dispose of any part of the principal.

The master of the rolls decided that it was a trust and in the course of his opinion lays down the rule which in

subsequent cases has been so often referred to, in these words: "Whenever any person gives property and points out the object, the property and the way it shall go, that does create a trust unless he shows clearly that his desire expressed is to be controlled by the party; and that he has an option to defeat it."

Now this is really nothing more nor less than had before been laid down by his predecessors in the foregoing cases. Properly construed it embraces the three requisites of certainty as to the object of the trust—the subject-matter of the trust—and the imperative character of the trust, and this is made more clear by the observations of *Chancellor* Loughborough on the appeal.

In the same case on appeal the decision below was affirmed, the *Lord Chancellor* saying: "In *Cunliffe* v. *Cunliffe*, Ambl. 586, a good deal turned upon the nature of the subject devised. From the nature of the subject, it could not be more than a recommendation, for he had full power to spend and waste it; the houses were sugar houses. In this case the surviving daughter could not have used any part of the property, the limitation to her issue would have tied it up."

His honor then mentioned a case in the house of lords. "A testator gave all his personal property to his daughter, and the words were extremely strong and imperative as to what should be done after her death, but a power was given her of spending part of it. From that I conceived that you must first see what interest the person to whom the recommendation is applied takes; if in express terms or by implication he has a power of spending part, or if the nature of the subject implies it, however strong the bequest is you cannot hold it an absolute trust; for that is making a will for another man. This is in effect what *Lord* Thurlow means by making the bequest certain."

The *Lord Chancellor* then expressed a desire to look

into the cases, and subsequently declared that there was no discrepancy between *Cunliffe* v. *Cunliffe*, and *Pier-·son* v. *Garnet*, approved of the decisions in *Bland* v. *Bland*, and *Atty-Gen.* v. *Hall*, and in summing up thus tersely expressed the principle : " The thing is certain where the whole property must remain entire during the life of the first person—it is uncertain where any power is in that person to diminish the amount."

On the previous day the chancellor expressed the opinion that the daughter was prohibited from using any part of the property, and he again states : " Here it must have remained entire, and in the words of the recommendation it was plain it was not wholly *ad arbitrium* of the ·surviving daughter."

Now it is submitted that under the will of W. A. Bryan it is clear that the widow had the right to use the whole fund, and it was purely and wholly at her discretion whether anything, or if anything how much, should be left.

Now though the decision of the master of the rolls was affirmed, yet *Lord* Loughborough had dissented ·from the opinion which he had expressed that *Cunliffe* v. *Cunliffe* had been overruled by *Pierson* v̌. *Garnet*, ·and this dissent rendered it needful that he should modify some of his expressions. The occasion soon occurred.

In *Pushman* v. *Filliter*, 3 Ves. Jr. 7, John Pushman, ·after some specific legacies, thus bequeathed : " Lastly ·all my household goods and furniture, plate, linen, and ·china, ready money and securities for money, stock in trade, together with the residue and remainder of my personal estate of every nature or kind soever or wheresoever, I give, devise and bequeath unto my said wife, Mary Pushman, desiring her to provide for my daughter Anne out of the same, as long as she my said wife shall live, ·and at her decease to dispose of what shall be left ᵃmong

my children in such manner as she shall judge most proper."

The wife died and the bill was filed against Filliter, her executor, by the children, claiming that the residuary clause created a trust. And it was argued that it was a gift for life, remainder to the children after her death, with power to provide for one daughter for her life.

The master of the rolls, in delivering his judgment, said: "The *Lord Chancellor*, in *Malim* v. *Keighley*, seems to think the lord commissioners in *Cunliffe* v. *Cunliffe* did not intend to break in upon the rule. I cannot but think still that it is overruled by *Pierson* v. *Garnet*, but, however, his Lordship agreed with me; and it is now clearly settled upon *Wynne* v. *Hawkins*, *Pierson* v. *Garnet*, and the other cases, that any words or recommendation by a person having a right to command do create a trust, if the person and the property are defined, and the only question is, whether it is clear the testator intended that his wife should have no power to dispose except for the maintenance of his daughter Anne, and meant to create a trust of all the rest. Therefore it is merely a question of construction of the words 'what shall be left,' whether they mean only what shall be left after providing for his daughter Anne. I think *Wynne* v. *Hawkins* as strong as this. It might have been equally contended in that case that he meant all, after she had expended what was necessary for her support. In this it must be contended that if a bill had been filed, the property would have been impounded. I am clearly of opinion that I should go too far, if I did not hold that he left it in the discretion of his wife to give to his children any part she might not dispose of. . . . According to what the *Lord Chancellor* in *Malim* v. *Keighley* says of *Cunliffe* v. *Cunliffe*, if the mother could spend it, there

is no trust, otherwise if she could not; therefore *Cunliffe*
v. *Cunliffe* is an authority for this decision."

Perhaps the principle has nowhere been more clearly
announced than by *Chief Baron* Richards, in delivering
the opinion in the case of *Heneage* v. *Andover*, in the
exchequer, and reported in 10 Price, 230 (1822).

The question arose on the will of John Walker Hene-
age and on this clause: "And I have devised and be-
queathed the whole of my said real and personal estate
hereinbefore particularly set forth unto my dear wife, *un-
fettered and unlimited*, in full confidence and with the
firmest persuasion, that in her future disposition and dis-
tribution thereof she will distinguish the heirs of my late
father by devising and bequeathing the whole of my said
estate, together and entire, to such of my father's heirs
as she may think best deserves her preference."

In discussing the question, his Lordship, on page 394,
lays down the doctrine of the cases in these words : " It
has been held, and must, I think, be admitted, that if an
intention appear in any part of the will to give to the
devisee a right or power to spend the property, words of
equal force with these words would not be imperative;
for the court in its astuteness to extract the meaning con-
ceives it to be inconsistent with an intention to create an
imperative trust, that the party should have the right or
power to dispose of the property at his pleasure, and by
using that privilege to any extent leave nothing or more
or less to remain the subject of a trust."

"In this case the devise and the words, 'unfettered
and unlimited,' which are used by the testator to show
his opinion of the extent of the interest devised, are cer-
tainly large enough to manifest an intention to convey
the absolute dominion to the party, as if words had been
used more directly authorizing her to spend it or to deal
with it as she pleased."

This court held that there was no trust, and the decision was affirmed by the house of lords.

Now it will be observed that in this will there was the recommendation that she should devise and bequeath the whole of the said estate together and entire, but notwithstanding the court held that because the testator had declared that he had devised and bequeathed the whole of my said real and personal estate unfettered and unlimited, that these words indicated the intention of the testator that she should have the power to spend the estate, and, this being so, it was inconsistent with the imposition of an imperative trust.

Now surely there can be no doubt that by the will of William A. Bryan there was ample and complete dominion given to his widow over all his estate, real and personal, that it was wholly in her discretion as to how much of that estate she would spend—that there was no obligation imposed upon her to keep any part, and no trust can therefore be predicated.

The same principle is clearly announced in the case of *Harwood* v. *West*, decided by *Vice-Chancellor Sir* John Leach, in 1823, and reported in 1 Sim. & Stu. 387, and though the trust was sustained, the doctrine of the preceding cases was pointedly approved.

The case was thus: John Powell gave to his wife all his personal estate for her own sole use and benefit, relying on her, if she should marry again she would secure to herself whatever she should possess herself by virtue of his will, so that the same should not be subject to the debts of her husband; and he recommended his wife that she should by her will give and bequeath what she should die possessed of under his will, in manner following: One moiety or half part between his two sisters, or their children; and the other moiety between his wife's two sisters, or their children, and he appointed his

wife and the defendant West, his executors. Mrs.
Powell applied all but £400 of the residue, after pay-
ment of debts to her own use, and invested the £400 in
stock, in the joint name of herself and West, and by her
will gave of this, one half to one of the sisters of the tes-
tator, and the other half to the other sister, and made the
plaintiff Harwood her executor. The executor filed his
bill against West for a transfer of the stock. The *Vice-
Chancellor* delivered his opinion thus: "It is essential
to the execution of a trust that the subject should be cer-
tain; and if this testator intended that his wife should,
at her pleasure, during her life, dispose of the property
which he left to her, and that his recommendation should
extend only to what, if anything, happened to remain of
his property at her death undisposed of by her, then
there is no trust to be administered by this court. It is
true that in terms his recommendation is that she shall
.  .  .  bequeath what she shall die possessed of under
and by virtue of that his will, .  .  . in manner as
therein stated, and if these words were uncontrolled by
any other part of the will, it would be to be implied that
he had in view only what she should happen to have left
at her death, and not all that he had given her. But in
a prior part of the will he directs that upon a second
marriage .  .  . the whole of the property which he
gives to her and not such part only as may then have
been undisposed of by her, shall be secured to her sepa-
rate use. .  .  . I must therefore consider that he had
in view the whole property which she should possess un-
der his will, and that the expression is equivalent to a
recommendation to give the whole property which she
should so possess."

In establishing the trust the vice-chancellor keeps
strictly in the line of the prior decisions in requiring cer-
tainty of the subject, and in declaring that the power of

the wife to part with the property would reduce the request to a recommendation for the disposal of an undefined residue, and be thereby destructive of the existence of a precatory trust.

Equally emphatic is the deliverance of *Lord* Langdale, *M. R.*, in the leading case of *Knight* v. *Knight*, decided in 1839–1840, and reported in 3 Beav. 171. ·After quoting the provisions of the will of Richard Payne Knight, he says: "That the testator wished that his estates should be preserved in the male line of his grandfather and had a reliance, or in the popular sense a trust, that the person to whom he gave his property and those who should succeed to it would act and realize that wish, admits of no doubt. He has expressed his wish and his reliance in terms, which are, to that extent, sufficiently clear.

"But it is not every wish or expectation which a testator may express, nor every act which he may wish his successors to do, that can or ought to be executed or enforced in this court." And he continues, "for of late years it has frequently been admitted by judges of great eminence that by interfering in such cases the court has sometimes rather made a will for the testator than executed the testator's will according to his intention; and the observation shows the necessity of being extremely cautious in admitting any, the least, extension of the principle to be extracted from a long series of authorities in respect of which such admissions have been made."

After this salutary caution his lordship then enumerates the three essentials that had been declared necessary to the creation of a trust. "First, that the words so used must be such that upon the whole they ought to be construed as imperative. Second, that the subject of the recommendation or wish be certain. Third, that the object or persons intended to be benefited must also be

certain." And, after illustrating his meaning by examples, he continued : " Thus the words 'free and unfettered' accompanying the strongest expressions of request were held to prevent the words of the request from being imperative. Any words by which it is expressed or from which it may be implied that the first taker may apply any part of the subject to his own use are held to prevent the subject of the gift from being certain."

The same doctrine is also illustrated and emphasized by the case of *Cowman* v. *Harrison,* decided by *Vice-Chancellor Sir* George James Turner, in 1852, and reported in 10 Hare, 234. The synopsis of the case is thus : A gift of the yearly interest, dividends, proceeds and profits to arise from the shares of the testator in a pottery, ship-building yard, shipping, trust moneys, effects and premises to his wife for her life, for the maintenance, education, and support of herself and his children ; and subject to some bequests and trusts for the advancement of the children, a bequest of the residue to the children equally ; and the testator particularly recommended, desired, and directed his wife, at her decease, by will or otherwise, to divide or dispose of what money or property she might have saved from the yearly income thereinbefore given to her, amongst all his children, in equal shares. It was held that the attempted disposition of the savings of the widow was in the nature of a precatory gift; but the widow having taken a beneficial interest, and being empowered to spend the whole, there was no certainty of the subject of the gift and no trust created of the savings in favor of the children; and that the same, therefore, belongs to the estate of the widow.

After the death of the widow, a bill was filed, claiming among other things, the savings of the income of the widow, and contending that the residuary personal estate of the widow consisted of the savings during her life out

of the rents, interest, and annual proceeds to which she became entitled during her life under the will of John Barwise, the testator, and that such savings and accumulations passed under and were subject to the trusts of his will in favor of his children.

Inasmuch as the opinion of *Vice-Chancellor* Turner is so clear, and so apposite to the present case, I will be pardoned for treating it with some particularity, and in detail.

After stating the question to be the right of the children under the will of John Barwise, to the savings of Joanna, he says: "Two views were put forward as to the effect of this clause with regard to the savings. The plaintiffs argued that it was a gift of the income to the widow, for her life, with a gift over to the children of so much as she might not spend, bringing the case within *Surman* v. *Surman*, 5 Madd. 123. On the other hand the defendants contended that this was a precatory gift made by means of a request imposed upon another, to whom the beneficial interest is given. The first thing to be considered is, within which class the disposition falls, which must be determined by the subject of the gift and the terms of the bequest. The subject of the gift in this case is 'savings.' The 'savings' are to be made by the widow. The amount of such savings is dependent entirely upon her. . . . He meant to give what she might save, but what she saved would depend entirely on her will and pleasure, and so far therefore as regards the subject of the bequest, it was to be the testator's gift; but whether there should ever be anything upon which it could take effect, depended upon the will and pleasure of the widow. Then what are the terms of the bequest? The widow is to dispose of it by will or otherwise. It is under her disposition that the children are to take. They take under her disposition made by the testator's desire,

and not under any gift contained in his will.    This is the very nature of a precatory gift.    It is not the case of a gift to A, with a gift over of the subject to B; but it falls within the class of cases where there is a gift to A, with a request that he will bequeath it to B.    I am of opinion, therefore, that this is a precatory gift.    The next question is, whether, as a precatory gift, it is good. The rule as to such gifts is that there must be certainty of subject; and the foundation of that rule stands on very solid grounds.    The right of a donee to spend the subject-matter of the gift is inconsistent with the nature of a trust, and the court therefore collects in that case that there can be no intention to impose a trust.    .    .    ... Independently of principle I think the authorities referred to by the defendants decide the question, and that the case falls within the class of cases in which the testator makes a gift of so much as shall be left at the decease of a person to whom he has given the use of the thing referred to."

The vice-chancellor then dismissed the bill.

Let us briefly apply these observations to the will of William A. Bryan.    By that will, subject only to the payment of his debts, the testator gave to his widow, Mary R. Bryan, all his estate, real and personal, and by force of his direction to sell, the realty became converted wholly into personalty.    This entire estate he gave to his wife absolutely, adding to the gift of it to her a request that if she should not require the whole of his estate as a support, she would will at her death the remainder to the children of his brother.    Now there was no gift by the testator to the children of his brother Charles. Whatever they might take, if anything, was to pass to them under the will of his widow, and the subject which was thus to pass, if anything, was so much as might be left at the decease of his widow, to whom he had given

beneficially the use of the thing referred to. Whether anything would be left, more than the widow would require, depended wholly upon her. Whether there would be any "remainder," was at her option. Whether she would save anything out of that which the testator had given to her absolutely, and which she had the right to spend, was wholly dependent upon her will and pleasure, and whether she would require the whole of his estate, was to be determined entirely by her discretion, as to how much she would spend, and with the exercise of which discretion no one had any right to interfere. There was, therefore, utter uncertainty, both as to the fact of any surplus or its amount, inasmuch as whether there would be any "remainder" to form the subject of a trust, depended wholly upon the person to whom the performance of the trust was committed, and who, under the will, had the uncontrollable right to determine whether there should be anything to which a trust could attach. Now this is inconsistent both with the imperative nature of the request and with the requisite certainty of the subject-matter, and fatal to the assumption of a trust.

Following this decision is the case of *Parnall* v. *Parnall*, decided by *Sir* Richard Malins, *V. C.*, in 1876, and reported in 9 Ch. Div. 96.

The question arose upon the will of Edwin Parnall, which was in these words: "I give and bequeath to my wife, Ann Parnall, after the payment of my just debts, the whole of my real and personal property for her sole use and benefit. It is my wish that whatever property my wife might possess at her death be equally divided between my children."

The whole of the property was claimed by the widow absolutely, and the question was presented on demurrer, whether there was any trust for the benefit of the chil-

dren.   On behalf of the widow the cases of *Atty-Gen.* v.
*Hall, Bland* v. *Bland, Wynne* v. *Hawkins*, and *Cowman*
v. *Harrison* were cited and relied on.   The opinion of
the vice-chancellor is brief but weighty.   He says : " In
this case there is no precatory trust, for there is no definite
gift over as there was in *Le Marchant* v. *Le Mar-*
*chant*, and there is no obligation here for the widow to
possess anything at her death.   In order to create a trust,
which can be carried into execution, there must be a
definite subject-matter.   Here the widow has a right
to spend the whole of the property, and so there can be
no trust affecting it.   This is the principle on which all
the cases cited from *Atty-Gen.* v. *Hall* to *Cowman* v.
*Harrison* proceed.   The case of *Harwood* v. *West*, cited
by the other side, is really in accordance with the other
cases, for there the testator's widow was, in the opinion
of the court, bound to give all that the testator left her
to the children after her decease."   The demurrer was
sustained.

Now short as is this enunciation, it contains the whole
matter, as it were in a nut-shell, and is a most admirable
compendium of the whole law as previously announced
by his predecessors, and established by a long train of
decisions.

Subsequently, and as the last of the English judgments
to which I shall call attention, came the case of *Mussoo-*
*rie Bank* v. *Raynor*, on appeal from the high court at
Allahabad, and heard in privy council in 1882, and re-
ported in 7 App. Cas. 321.   It came on for the construc-
tion of the will of William Raynor, which was in these
words :   " I give to my dearly beloved wife, Mary Ann
Raynor, the whole of my property, both real and per-
sonal, including my government promissory notes, Delhi
Bank shares, my house at Ferozepore, No. 50, together
with all my plate and plated ware, and whatever money,

furniture, carriages, horses, etc., may be in my possession at the time of my decease, together with all moneys due or which may afterwards become due, feeling confident that she will act justly to our children in dividing the same when no longer required by her." Now it will be observed that there is no other limitation to Mary Ann, the widow, than by the description of "the whole of my property, both real and personal," which of course imported the absolute gift, and there was no other power of disposal except as conferred by the words "when no longer required by her." It was contended on the one side, that the widow took an absolute interest, and, on the other, that she took affected by a trust to divide among the children.

After disposing of a preliminary question as to the propriety of hearing the appeal, *Sir* Arthur Hobhouse thus expressed the judgment of the privy council upon the main question: "Passing to the merits of the case, their lordships are of opinion that the current of decisions now prevalent for many years in the court of chancery shows that the doctrine of precatory trusts is not to be extended; and it is sufficient for that purpose to refer to the judgments given by *Lord Justice* James, in the case of *Lambe* v. *Eames*, L. R. 6 Ch. 597, and by *Sir* George Jessel, in the case of *Re Hutchinson and Tenant*, L. R. 8 Ch. Div. 540. They are further of opinion that if the doctrine of precatory trusts were applied to the present case, it would extend far beyond the limits to which any previous case has gone. No case has been cited and probably no case could be cited, in which the doctrine of precatory trusts has been held to prevail when the property said to be given over is only given when no longer required by the first taker.

"Now these rules are clear with respect to the doctrine of precatory trusts, that the words of gift used by the

testator must be such that the court finds them to be imperative on the first taker of the property, and that the subject of the gift over must be well defined and certain. If there is uncertainty as to the amount or nature of the property that is given over, two difficulties at once arise. There is not only difficulty in the execution of the trust, because the court does not know upon what property to lay its hands, but the uncertainty in the subject of the gift has a reflex action upon the previous words and throws doubt upon the intention of the testator and seems to show that he could not possibly have intended his words of confidence, hope, or whatever they may be—his appeal to the conscience of the first taker—to be imperative words.

"In this case nothing is given over to the children of the testator except by an expression of confidence in his wife that she will deal justly in dividing the property among them, and that she will do it when the property is no longer required by her. If the testator had given to his children such property as was not required by his wife, or if he had given over his property if it was not required by his wife, the gift over would, according to a very well known and well established class of cases, have been void because of the uncertainty. It would have been void, not merely because the words of gift over were precatory only, but it would have been void, notwithstanding that the most direct and precise words of gift over might be used. Their lordships think that substantially the words 'when no longer required by her' must in this will be taken to have the same meaning as if he had said: 'I give to my children so much as is not required by her.'

"Considering the nature of the property, which includes a number of articles, as to some of which the use is equivalent to the consumption—to the nature of the first

gift which, although not expressed in terms to be an ab-
solute gift, is quite unlimited, and is legally an absolute
gift; and to the fact that the first gift is only cut down
by words which do not constitute a direct gift, but are
to operate through an influence upon the conscience and
feelings of the wife, their lordships cannot come to any
other conclusion than that the testator intended his wife
to use the property according to her requirements. This
is equivalent to an absolute gift to the wife."

Let us for a moment apply this decision to the will of
William A. Bryan. The words in the will of Raynor
were, "when no longer required by her," and the ques-
tion was as to their import. In the discussion it was con-
tended for the respondent, that the will gave to the widow
the right of enjoyment for life with a power of appoint-
ment to be exercised by fair division among the children,
and this argument was based upon the fact that the tes-
tator had said, "all my property," and directed her to
divide "the same" when no longer required. The
counsel was interrupted by *Sir* Barnes Peacock, one of
the judges, who inquired of him, "whether she might
not use it as required," and *Sir* Arthur Hobhouse added :
"If he had given over what was not required, such gift
would have been void for uncertainty." This was the
crucial test, and the privy council, in its construction of
the words used by the testator, arrived at the precise
meaning of the language employed in the will before us.
In the will of Bryan it is in terms provided that the
widow may spend the entire property, for the express
provision is, "if she shall not require the whole as a sup-
port,"—giving to her unlimited discretion and making it
exactly equivalent to the words at which the privy coun-
cil arrived, as expressing the meaning of the gift in the
will of Raynor " so much as is not required by her " and
which it decided to be an absolute gift to the widow, and

as if to make the decision in all respects coincident with the present case, it further decided that though not directly expressed to be absolute, the first gift to the widow, which is in the same terms, as in the will of Bryan, was quite unlimited and legally an absolute gift.

I have thus gathered and collated the decisions of the chancery judges of England for more than a century. From first to last there is unanimity in the announcement of the principles which govern precatory trusts as exhibited in this will. There is an unbroken assent to the proposition that when in a will there has been an absolute gift and a subsequent bequest over of an unused residue, that it is void, and where the disposition over has been attempted to be made by the agency of a precatory trust, that it is equally void, and that this always occurs when the terms of the first bequest show that the person to whom it was given had the right to spend the property out of which the gift over, whether direct or precatory, was to arise.

The only change which has been made in England is the modification of the doctrine of the earlier cases in regard to the presumption with which the judges approached the subject of construction. It was at first held that words of desire and confidence had at least a quasi technical meaning and force, and *prima facie* imported a trust unless controlled by other expressions. This was unsatisfactory to many of the ablest judges. *Lord* Eldon said in *Wright* v. *Atkyns*, 1 Ves. & B. 313: "This sort of a trust is generally a surprise on the intention," and *Sir* Anthony Hart declared in *Sale* v. *Moore*, 1 Sim. 534: "The first case that construed words of recommendation into a command made a will for the testator, for every one knows the distinction between them." And in the case of *Heneage* v. *Andover*, *Lord Chief Baron* Richards says: "I hope to be forgiven if I entertain a strong

doubt whether in many or perhaps in most of the cases
the constructions are not adverse to the real intention of
the testator.   It seems to me very singular that a person
who really meant to impose the obligation should use a
course so circuitous and a language so inappropriate and
also obscure, to express what might have been conveyed
in the clearest and most usual terms—terms the most
familiar to the testator himself and to the professional, or
any other person who might prepare his will."

As the result of this extensive and increasing dissatis-
faction the current of judicial sentiment has changed and
in modern decisions the leaning of the court has been
distinctly against the establishment of precatory trusts.
To *Lord Justice* James has been attributed the manifes-
tation of the courage to perform what everybody agreed
ought to be done, but which a long-established rule of
construction rendered it an act of boldness to attempt.
The change is in further restriction of the declaration of
precatory trusts, leaving unimpaired, or rather, more
strongly insisting on the essential requisites of the im-
perative nature of the request and the certainty of the
subject-matter, or, as expressed in the case of *Mussoo-
rie Bank* v. *Raynor*, when it appears that " the testator
intended the wife to use the property according to her
requirements, it imports an absolute gift."

Such being the doctrine of the English courts, it will
be found that the American decisions are in harmony
with them.   Of course I cannot review or even advert
to the multitudinous adjudications of forty independent
jurisdictions.   It will be sufficient to refer to the judg-
ment of the highest tribunal and to a few cases which it
commends.   The matter was considered in the case of
*Howard* v. *Carusi*, 109 U. S. 725, 27 L. ed. 1089.   The
question arose upon the will of Lewis Carusi, of which
the material portion is in these words: "And as to all

my property, real, personal, and mixed, after the payment of my just debts and funeral charges as. aforesaid, and the payment of the legacies hereinafter mentioned, I give, devise, and bequeath the same to my brother Samuel Carusi, to be held, used, and enjoyed by him, his heirs, executors, administrators, and assignees forever, with the hope and trust however that he will not diminish the same to a greater extent than may be necessary for his comfortable support and maintenance, and that at his death the same, or so much thereof as he, the said Samuel Carusi, shall not have disposed of by devise or sale, shall descend to my three beloved nieces, Phillippa Estelle Caulfield, Genevieve E. Carusi, and Isolina E. Carusi, daughters of my said brother;" and then indicated the shares in which they should take.

Samuel Carusi took possession, and by his will devised all his real estate to his wife for her life, with remainder in fee to his six children instead of the three named in the will of Lewis Carusi. Isolina Howard, one of the three daughters, filed her bill in the Supreme Court of the District of Columbia, claiming that, under the will of Lewis, his brother, Samuel Carusi was a trustee. On appeal to the Supreme Court of the United States, that tribunal dealt first with the question, whether, if taken as a remainder given directly by Lewis Carusi to the three nieces it was good, and after declaring that as such it would be void, proceeded thus: "The case of complainant receives no support from the precatory words of Lewis Carusi. The words express " the hope and trust that Samuel Carusi will not diminish the same (viz., the property devised to him by the will), to a greater extent than may answer for his comfortable support, and the testator then devises to complainant and her sisters what Samuel shall not have disposed of by devise or sale. These words do not raise any trust in Samuel. He is

not made a trustee for any purpose, and no duty in re-
spect to the disposition of the estate is imposed on him.
But even if the will had contained an express request
that Samuel shall convey to the complainant so much of
the estate as he did not dispose of by sale or devise,
there would be no trust, for the will, as we have seen,
gives Samuel Carusi the absolute power of disposition."

The judge then, after referring to *Knight* v. *Knight*,
quoted above, and to various English decisions, cites with
approbation the case of *Pennock's Estate*, 20 Pa. 268, 59
Am. Dec. 718. The history of this case is equally inter-
esting and instructive. It first came before the Supreme
Court of Pennsylvania in 1845, under the name of *Coates'
Appeal*, and is reported in 2 Pa. 129. It arose on the
will of Isaac Pennock, by which, in so far as is material,
he gave, after payment of debts, to his wife "the use,
benefit, and profits of my real estate, during her natural
life, and also all my personal estate of every description,
including ground-rents, bank stock, bonds, notes, book-
debts, goods, and chattels, absolutely; having full confi-
dence that she will leave the surplus to be divided at her
decease justly among my children."

On the death of the widow, the husband of one of the
children petitioned the Orphans' Court of Chester County,
for a citation for a settlement of the accounts of the
widow as surviving executor of the testator. The execu-
tor of the widow demurred and the court dismissed the
petition. There was an appeal to the Supreme Court,
and the question was, What, under the will of Isaac Pen-
nock, was the interest of the widow in the personalty?

Rogers, *J.*, delivered the opinion of the court, and thus
fairly stated the issue: "The only question is as to the
interest which the widow took in the personal estate.
The petitioner contends the bequest of the personal es-
tate was for the benefit of the wife during her life and

---

---

in trust for her children after her death. The respond-ent, that she had an absolute estate in the personal prop-erty, with the right of disposing of it in her lifetime, and after her death as she might think proper. One asserts it to be a trust, the other an absolute gift."

The learned judge first laid down in general terms the proposition, that a testator manifests an intention of cre-ating a trust if he employs precatory or recommendatory words and declared that the words in the will of Pennock were sufficient to create a trust for the children, unless they were controlled by other expressions, thus adopting in its full import the ancient English rule of technical presumption. He then adds : " It is very true that the current of decisions, of late years, has been against con- · verting the legatee into a trustee," and having quoted at large that portion of Story's Equity in which that emi-nent jurist speaks with disapprobation of the principle of converting expressions of recommendation, confidence, wish, and desire into positive commands, the learned jus-tice said : " I have made the extract of the remarks of *Mr. Justice* Story with a view of expressing my dissent." His honor then proceeds with the expression of his opin-ion that precatory words should be considered *prima fa-cie* as used in an imperative and peremptory sense, and that it should be required to be shown from the context that such was not the intention of the testator. Finding himself embarrassed by the word " absolutely," he argued that it was difficult to conceive that it had more potency than the words in *Wright* v. *Atkyns*, 17 Ves. Jr. 255, which, as he stated, "was a devise to A. and his heirs forever, and yet held, notwithstanding, to be a devise to A of an estate for life, with a remainder in trust for the devisor's heirs as *personæ designatæ*," and principally on the strength of this case ruled that Martha Pennock, the widow, took an estate for life.

. Now in the case of *Wright* v. *Atkyns*, the words were, "unto my dear mother, Charlotte Atkyns and her heirs forever, in the perfect confidence that after her decease she will devise the property to my family," and it is true that upon the original hearing before *Sir* William Grant, reported in 17 Ves. Jr. 255, and upon the appeal before *Lord* Eldon, in 19 Ves. Jr. 199, both held that it was a life estate in Charlotte Atkyns, yet this decree was reversed by the house of lords, and the matter of the case coming up again before *Lord* Eldon upon another application (Turn. & R. 154), his lordship had the candor to acknowledge his error, and to say : " Upon reconsidering this case I am perfectly satisfied that there is no ground to say that Mrs. Atkyns is only tenant for life."

It is respectfully suggested that so far as the decision that the words of the will of Isaac Pennock import a life estate in Martha Pennock, his widow, was based on the case of *Wright* v. *Atkyns*, it was misplaced. Being pressed by the suggestion that inasmuch as the will of Pennock provided for the bequest over of a "surplus" which necessarily implied want of certainty in the subject-matter, the learned judge says : " It is argued that when there is any uncertainty of the property to which the bequest should attach, it defeats it as a recommendatory trust."

To this proposition his honor agreed, and after admitting that *Pushman* v. *Filliter*, which had been cited, was decided upon proper grounds, thus proceeds : " So when the testator bequeathed to his wife the residue of his personal estate, not doubting but that she will dispose of what shall be left at her death, to his two grandchildren, it was held not to be a recommendatory trust. As there was uncertainty as to what might be left, the widow having the power to dispose of as much as she pleased, it defeats it as a trust and is an absolute gift to the wife.

So if in this case the fair construction 'having full con-
fidence that she will leave the surplus to be divided at
her decease justly among my children,' should be that
the wife had an absolute control over the whole personal
estate, to do with it as she pleased,—to sell it or give it
away,—and that the testator intended the remainder or
residue only left at her death should be divided among
her children, the uncertainty attached to the bequest will
defeat it as a recommendatory trust. This is conceded;
on the other hand, if on a sound construction of the
whole will the testator's intention was to bequeath to the
wife the income of his estate during life, under a trust
that, at her decease, it would be divided among his chil-
dren,—that the word 'surplus' refers to his death, and
not to the death of the wife, it must be viewed as a rec-
ommendatory trust, which a court will take care of, shall
neither be defeated nor perverted."

This was narrowing the issue to the mere question,
whether that which was the subject-matter of the alleged
trust was the whole principal fund which had been be-
queathed, or of the residue only which she might leave
unexpended at her death, and having thus conceded all
that is claimed as material to our purpose in the con-
struction of the will of Bryan, he proceeds to define the
meaning of the word "surplus" and construes it to
mean, not what should be left at the death of the widow,
but what was left at the death of the testator. He says:
"She could spend the income as he directed for the good
of her children, but the surplus is that which remains
after paying debts and personal expenses—the capital
stock—was beyond her control."

Now had this interpretation by the court of the will of
Isaac Pennock been correct, then the conclusion that
Martha B. Pennock, the widow and first taker, had but
a life estate in the personal property, and that there was

a trust as to the principal fund, would have been in exact accordance with the course of the decisions, because being confined, in her expenditure, to the income, and prohibited to diminish the capital, there would have been certainty of the subject-matter, there being no power in her to spend any portion of the *corpus*, it would have been a certain and ascertained sum, capable of being preserved as a trust fund.

The same will came before the court for consideration upon *McKonkey's App.*, in 1850, 13 Pa. 253. Mrs. Pennock had died leaving her will, giving something to part of the children of her husband, but making no mention of the others. The court, in the prior case, having decided that she took the estate subject to a trust, for division at her death among the children, the question here was, whether, by the will of the widow, the trust had been properly executed.

In delivering the opinion Gibson, *Ch. J.*, starts with the declaration: "The decree in *Coates' App.* settled the point that the bequest of the personal estate gave Mrs. Pennock the ownership of it for life; and that though it was expressed in words of absolute gift, they were qualified by the testator's declaration of confidence that she would leave the surplus to be divided justly among his children." His honor then admits that, "in the English courts the current of decision is beginning to set the other way; and it may be thought we ought to have fallen in with it. My own opinion is that we ought not,"—thus conceding that if the will of Pennock had been construed according to the drift of English authority, it must have received a different interpretation.

Having thus assumed the matter of construction settled and. at rest, by the former decision, and that Mrs. Pennock had only an interest for life and subject to a

trust to divide among the children, he proceeded to consider whether by her will it had been well executed. Now the thing which, by the will of Isaac Pennock, was to be divided was " the surplus," and the chief justice thus gave his definition of that word as used by the testator. He says : " The testator gave the profits of his real estate to Mrs. Pennock for life and his personal estate absolutely, having as he said full confidence that she would leave the surplus to be divided at her decease justly among his children. It is plain she was to have the use, not only of the income of the personal estate, but the estate itself as if she were the untrammeled owner of it. What other meaning can be given to the word ' absolutely ?' We may not strike it out, and if he meant not to give her a right to consume both principal and proceeds he knew not what he said."

Now it is not to be controverted that *Coates' App.*, which his honor said had settled the matter of the meaning of Pennock's will, had so settled it upon the explicit statement that the word "surplus" referred to what was left at Pennock's death, and " that if the testator intended the remainder or residue only left at her death should be divided among her children, the uncertainty attached to the bequest will defeat it as a recommendatory trust," and the conclusion that it was a life estate in the widow and a trust for the children as to the principal, was placed expressly on the ground that " she could spend the income, as he directed, for the good of the children, but the surplus, or that which remains after paying debts and funeral expenses—the capital stock—was beyond her control."

Notwithstanding his construction of the word " surplus " was diametrically opposed to that of the court in *Coates' App.*, and wholly subversive of the declared reason and only ground upon which that decision was based,

his honor continued to insist that the construction had been settled by *Coates' App.*, and that it was a trust to be executed in accordance with the will and that Mrs. Pennock was bound to give all the children something, but, that as she did not, it was therefore not well executed, and made an 'order of reference to ascertain the value of the surplus of Isaac Pennock's personal property unexpended at the death of the widow.

This being the legal situation and the master to whom the reference was made having reported and exceptions taken, the whole matter came again before the Supreme Court for adjudication in 1853, in *Pennock's Estate*, 20 Pa. 268, 59 Am. Dec. 718.   On the one side it was contended that *Coates' App.* had been virtually overruled by *McKonkey's App.*, which decided that the widow had the right to dispose of the capital fund and that the trust existed only as to the surplus undisposed of at her death; while on the other part it was contended that *Judge* Gibson did not intend to say that the power was applicable only to the surplus remaining after the widow had disposed of what she pleased, for then the trust would have been uncertain, and it was admitted that certainty of the subject-matter was one of the requisites to the existence of a trust of this nature, and that the chief justice considering the question of construction settled by *Coates' App.* did not design to enter at all into that question.

This contention necessarily again opened up the whole matter of the will of Isaac Pennock as to the scope of the bequest to his widow.

The opinion of the court was delivered by *Justice* Lowrie, who after adverting to the fact that the will had been twice before the court and that the construction had been determined by the application of an antiquated rule which required that precatory words should " of

themselves import a trust and that such is the proper
construction of them, unless there are other expressions
controlling them and showing a contrary intent;" but
that the technical effect insisted on as belonging to the
words had never received judicial sanction in Pennsyl-
vania until the first opening of the cause, and that, there-
fore, the whole question as to their character was fairly
open for consideration; he then proceeded to consider
the origin and nature of such trusts under the Roman
and ancient English systems, and after showing why the
stringent rule of interpretation was incorporated into
their jurisprudence, says: "But the rule is fading away
even in England. The disrelish with which it is received
by the legal and judicial minds of that country may be
seen in the doctrine of extreme certainty required as to
the subject and object of recommendation. . . . That
it is everywhere regarded as frustrating the will of the
testator. . . . If it can be implied from the words
that a discretion is left to withdraw any part of the sub-
ject of the devise from the object of the wish or request,
or to apply it to the use of the devisee, no trust is cre-
ated."

Having cited the English cases announcing those re-
sults of the application of the old rule, he adverts to *Judge*
Gibson's construction of the word "surplus," in *Mc-
Konkey's App.*, and to his opinion declaring Mrs. Pen-
nock to have had the right to withdraw the principal as
well as the interest for her own use as absolute owner,
and to the order of reference to ascertain the value of
the personal property remaining at her death as the con-
sequence of that opinion, and says: "But it was not a
legitimate consequence, as the cases last above referred
to prove; for if she might apply the principal to her
own use then there can be no trust and the case ought
to have been dismissed, not referred. How could there

be a trust in the legal sense of that word? No trust that
is uncertain is enforced by law, because the law would
have to define it, or in other words create it before en-
forcing it."

Now this was exactly the principle admitted to exist
in relation to the creation of precatory trusts, by *Justice*
Rogers in the case of *Coates' App.*, but the element of
certainty in the subject-matter of the trust was supposed
to have resided in the word "surplus," which the court
there held to mean the residue left at the death of Isaac
Pennock, and having found this it decided that the
widow was bound to preserve this "surplus" intact,—that
she had no interest except in the income for her life,—
that she had no right to expend any of the principal;
but as to that fund was a trustee to divide among the
children under the will.

Upon the supposition that the meaning of the word
"surplus" was correctly expressed by the court in
*Coates' Appeal*, and that the widow was confined to the
use of the income only, then the conclusion was a proper
one under the application of the stringent rule of con-
struction giving to precatory words the technical quality
of imperative command, but when, in the case of *Mc-
Konkey's App.*, the same court held that the widow had
the right to spend the principal of the bequest and that
the word "surplus" meant only what she pleased to
leave, then it became wholly uncertain and upon every
recognized principle of construction applied to such
trusts, the case, as said by the court in *Pennock's Estate*,
"ought to have been dismissed, not referred."

Proceeding in the matter of construction, the judge
discards the application of what he terms "the antiquated
English rule" and after stating that the will created no
trust, says: "It is not to be disputed that these views
are directly opposite to those expressed by this court

when this cause was first heard, but we cannot help it. . . . Even in the present case the opinion first declared (*Coates' App.*) adopted the old English rule in all its stringency, while the second one (*McKonkey's App.*) obviously flinched from a full application of a construction so artificial and unnatural. Such vacillations are to be expected, when an unusual rule comes to be first applied. It is well to declare at once and before any wrong is consummated by our judgment, that the rule has no foundation in any of our customs or institutions and no place in our law."

The court then announced its judgment in the following propositions:

1. "Words in a will expressive of desire, recommendation, and confidence are not words of technical, but of common parlance, and are not, *prima facie*, sufficient to convert a devise or bequest into a trust; and the old Roman and English rule on this subject is not part of the common law of Pennsylvania."

2. "Such words may amount to a declaration of trust when it appears from the other parts of the will that the testator intended not to commit the estate to the devisee or legatee, or the ultimate disposal of it to his kindness, justice, or discretion."

3. "By this will the absolute ownership of the personal property of Mr. Pennock is given to his widow with an expression of mere expectation that she will use and dispose of it discreetly as a mother and that no trust is created thereby."

I have digested and presented these three cases at length, not only because *Pennock's Estate* was referred to by the Supreme Court of the United States with commendation, but because they furnish a complete epitome of the law applicable to the present investigation.

It will be observed that in *Howard* v. *Carusi*, and in

the various discussions of the will·of Isaac Pennock, the object of the search was to discover whether the first devisee had the right to spend the property so as to render nugatory the power of the law to prevent the destruction of the subject-matter of an alleged trust, or to render it uncertain from the beginning whether there would remain anything upon which the trust could operate.

It was attempted in the former case to find it in the hope and trust expressed by the testator that Samuel Carusi, his devisee, would not diminish the estate devised " to a greater extent than ·might be necessary for his comfortable support and maintenance; " and in *The Matter of Pennock's Will* by the declaration of the testator's ·" full confidence that she would leave the surplus " to his children, forms of expression which, it was argued, denoted the intention of the testator to limit the power of expenditure by the devisees and converted the gift into an estate for life, with an ulterior trust, operative by way of appointment ; but as soon as it was discovered that, in the one case, Samuel Carusi had conferred upon him the capacity to expend the whole estate devised, and in the other Martha Pennock was authorized to expend the whole personalty bequeathed, the investigation came to an end and it was resolved that this power to spend the *corpus* of the bequest rendered a precatory trust impossible.

Now that which was the object of such careful scrutiny and, in *The Matter of Pennock's Will,* upon which ·eminent judges differed, the existence of this right to spend the fund, is, by the will of William A. Bryan, explicitly conferred. By the express terms of this will it is perfectly clear that his widow had the right to spend the whole of the estate, and this not only upon the legal intendment that an absolute interest was given by the unrestricted nature of the gift to her, but by the very

words of the will, which it is argued create the trust, it is explicitly provided that the request is subject to the saving, " if she shall not require the whole of my estate as a support." It cannot be doubted that, if there had been no other expression which authorized her to expend the whole capital, this would have been sufficient. Now if the words relied on by the complainants shall be held to create a trust, then in the language of the cases I have cited, it was a trust incapable of enforcement, so as to preserve for the beneficiaries any part of the fund. Could any court take cognizance of the manner in which the widow was employing the capital thus unlimitedly committed to her discretion ? What could be laid down as the judicial measure of being " required as a support." Would it have been permissible for the *cestuis que trust* to have filed a bill alleging that the widow was extravagantly wasting the fund and asking that it be impounded and an allowance made to her ? This proposition was dealt with by the chancellor in the case of *Wynne* v. *Hawkins*, where the will provided " and as I shall leave behind me over and above the said legacies only sufficient for a decent maintenance for my loving wife Mary Wynne, by whose prudence and economy I have saved the greatest part of the fortune I shall die possessed of, not doubting but that she will dispose of what shall be left at her death, to our grandchildren." The bill was for an undisposed of residue after the death of the widow. Here it was as clearly expressed as in the will of Bryan, that the purpose of the testator was the decent maintenance of his widow. That, like Bryan, he was doubtful whether there would be enough and expressed his confidence, as Bryan his request, that she would will what should be left at her death—there, to " our grandchildren," —here, " to the children of my brother Charles." *Lord* Thurlow dismissed the bill upon the consideration that

no bill could have been filed restricting the wife in the use of the fund,—that the testator "meant this fortune to pass through the pleasure of his wife, leaving her to use what she pleased and consequently to make the residue such as she chose," and, therefore, there could be no trust.

So in *Pushman* v. *Filliter*, which was a bill against the executor of Mary Pushman, by the children, who claimed under what they contended was a trust, the words were, after a bequest to Mary Pushman, his widow, of his personal estate : "and after her decease to dispose of what shall be left among my children, as she shall judge most proper." The master of the rolls said : "There is only one question : whether if a bill had been filed in the wife's life, the court would have compelled her to set apart a sufficient part for her daughter Anne, and have directed that she should have the rest for life, and that it should go over at her decease. The only question is whether she could spend any more than the interest of the property, after having provided for her daughter. . : . It must be contended that, if a bill had been filed, the property would have been impounded. I am clearly of opinion that I should go too far, if I did not hold that he left in the discretion of his wife to give to his children any part she might not dispose of." It was held no trust.

The same suggestion was made in *Sprange* v. *Barnard*, where the bequest was " the sum of £300, which is now in the joint-stock annuities for his sole use, and the remaining part of what is left that he does not want for his own wants and use, to be divided, etc."

Now it will be observed that this was the original and only bequest and is therefore much more narrowly limited, and the words "for his own wants and use," are far more suggestive of a life estate than any words in the

will of Bryan. It was so contended for the defendants and the court was asked to impound the property. But Sir Lloyd Kenyon refused, saying : " It appears to me to be a trust which would be impossible to be executed," and decreed the £300 to Sprange absolutely. Why? Because the testatrix had left it to his own judgment to determine how much he might want "for his own wants;" as here when Mr. Bryan said, after giving his entire estate to his wife in unlimited terms, " if she shall not require the whole of my estate," he left the determination of her wants to herself—and invested her with discretion to judge and decide how much she would require as a support—a discretion with which no court has any right to interfere.

So in the *Case of the Mussoorie Bank*, it was contended that the words imported the right of enjoyment by the wife for her life, with a power of appointment, to be exercised in the mode prescribed, but the privy council, construing the words " when no longer required by her " to be exactly equivalent to " so much as is not required by her, " decreed that by that form of gift the bequest was made absolute. Now this is the precise expression in the will of William A. Bryan. The words " if she shall not require the whole as a support;" " so much as he may not want for his wants and use;" and " so much as is not required by him;" are manifestly equivalent, and must receive the same interpretation, unless there are some other words indicative of the testator's intention which control them. But the will under consideration starts with the most unlimited gift to the wife of his whole estate—it not only gives explicitly, to her, the right and power to spend the whole, but as if to give to her absolute immunity it sedulously provides that there shall be neither security required of her nor shall there be any appraisement, to show what might go into her

hands. She was thus clearly indicated as the principal object of his solicitude and bounty and well knowing that he had given to her his whole estate, to be used at her discretion, he simply requests that, if she shall not have occasion to spend the whole, she will, at her death, will the remainder to the children of his brother. What remainder? Manifestly that, if any, which she might choose to leave. How is it possible that any court can exercise supervisory power over the discretion vested by words like these—or compel her to leave any residue against her own wish—or declare that to be a trust which, in judicial language, is incapable of enforcement.

It is undoubtedly true that William A. Bryan requested that, in case his widow should have more than enough for her support, she would bequeath the remainder to the children of his brother; it is probably true that he expected she would do so, but as said by *Lord* Langdale in *Knight* v. *Knight:* "It is not every wish or expectation which a testator may express, that can or ought to be executed or enforced as a trust" and, besides the impossibility of its enforcement so often declared by judges, as the reason for negativing its existence, the imputation of an intention to burthen a legatee with a trust, while at the same time placing in his hands the means of defeating it by wasting the estate, not only imputes inconsistent purposes, but puts a premium upon extravagance, and brings about the prevention of the wish of the testator, since, if the legatee was willing to act in accordance with that wish, no trust was necessary, and if otherwise, the attempt to constrain his volition would inevitably lead to the adoption of the means to defeat it, by the destruction of anything to which it could attach.

It is therefore, on behalf of the defendant, confidently submitted, that even under the ancient stringent rule, which made the use of precatory words presumptive evi-

dence of the intention to create a trust, the will of William A. Bryan imposed upon his widow no obligatory trust as to the bequest to her—and that much more, under the modern canon of interpretation, by which words of desire, request, or expectation are deprived of their former technical signification, and are construed according to their ordinary meaning, such bequest will be held to have been an absolute gift.

With this conclusion the law of Virginia, the domicil of the testator, is in harmony, and in support of this statement the defendant refers without comment to the cases of *May* v. *Joynes*, 20 Gratt. 692; *Carr* v. *Effinger*, 78 Va. 197; and *Cole* v. *Cole*, 79 Va. 251.

On behalf of the complainants no apposite and acknowledged decision of any authority has been shown, and it is submitted that none can be shown, countervailing the long line of decisions in England and in this country by which the contention of the defendant is supported.

It surely cannot be necessary to deal with citations of cases in which, where property was given expressly in trust, but the testator failed to indicate the trusts to be performed, so that it became inoperative, it was adjudged that the first taker took no beneficial interest and the property so given went to the heirs or legal distributees; or with those where the first devise or bequest was for life only, but with a power superadded by which the first taker was authorized to diminish or even spend all the property, and a gift over of so much as she might not dispose of, since it is manifest that the disposal by the first taker is not in pursuance of the nature of the original gift, but of the authority conferred by the power, which so far as it remained unexecuted, left the residue to pass under the limitation over, after the life interest expired.

*J. Alexander Fulton,* for the complainants, in reply:

The learned solicitor's first three conjoint propositions, to wit, first "that where a bequest is made in terms importing an absolute gift, precatory words will never be construed as creating a trust, if either they ought not upon the whole will to be considered as imperative; or second, if the subject-matter of the bequest be uncertain; or, third, if the objects intended to be benefited be not clearly ascertained,"—may be admitted as abstract rules of construction.

The difficulty always has been, and always will be, in their application. In the outset, who is to determine whether the terms used do or do not impart an absolute gift? Plainly the court, whenever the question is brought before it. How? By the usual methods of interpretation, to wit, by considering the words themselves, the context and the circumstances. Hence it is that the courts have over and over again declared that every case must stand upon its own merits, and be decided upon its own circumstances; and some judges have even gone to the length of saying that the decisions in prior cases can give them little aid in the construction of any will, inasmuch as the circumstances of each case are so dissimilar. But they afford the only light we have in our search for the correct rule, and they alone furnish illustrations of its judicial application.

The learned solicitor lays down and insists upon another adjunctive and dependent proposition. It is this: "If in any gift there is manifest intention to give to the devisee a right or power to dispose of the property so given, and by using such right to leave more or less or nothing, upon which the trust would operate, then such precatory words will never be construed as imperative."

This proposition can only be true in a qualified sense. As an unbending rule it is not true, and is not sustained

even by the authorities adduced by the learned solicitor himself, as the cases cited show; and in the case now before the court it can have no application. As before observed, every case must be decided upon its own merits, and in view of its own circumstances. And here, the rule even if true in the abstract, would not avail the respondent, because "it is nowhere manifest" that the testator gave the legatee, his widow, the right or power to dispose of it absolutely at her own will and pleasure; but on the contrary, he gave her only a limited and qualified right to use it, or so much of it as might be required for her personal support. Beyond that she could not go. She could use it for no other purpose whatever; and, in order that this purpose might be carried out according to his will, she was "authorized and directed to invest it in good stocks or bonds." In view of such imperative and controlling words, how can it be contended, even with plausibility, that it was the testator's manifest intention to give her an absolute right of disposal, according to her mere will and pleasure? Such a construction would be manifestly contrary to the plain meaning of the words used and of the intent of the testator.

The learned solicitor has argued with great earnestness that where there is a "remainder," a "surplus," or a "residue," left to go to a second beneficiary, it must be the whole of the legacy given to the first taker; and if that may be increased or diminished by use, or any other contingency, the gift over fails for uncertainty. It seems to me that this is a very strained and unreasonable contention; and is entirely inconsistent with the cardinal rule of construction which seeks the intent of the testator. Were such a rule as is here contended for adopted, the intent of the testator would be defeated in nine cases out of ten, for in nine out of ten the testator designs and intends that part only shall go to the first object of his

bounty.   And the cases cited by the learned solicitor himself are in accord with, and fully sustain, this position as a careful examination will make clearly manifest.   But such a rule would be as contrary to reason as authority. For what is the intent and purpose of these testamentary gifts?   Is not the primary object to provide for the first taker, who always stands nearest to the testator?   And how is it done?   By giving him what may be necessary, in the judgment of the testator, for his comfort, support, education, or other special purpose.   Then, when this is accomplished, that the "residue," "remainder" or "surplus" shall go to another, who stands a step more remote from the donor.   Now is it reasonable that unless this last can get the whole, when the first has been served, he shall have none?   Such a construction would not only be unreasonable, but it would, as has been already said, completely defeat the object of the gift.

I have found no authorities that sustain such a view; but in nearly all that the learned solicitor himself has cited, it is manifest that the gift over was subject to accretion or diminution, and in not a single one did the gift fail for that reason.   In some of them it was plainly apparent that only a part of the gift could go over to the second taker, yet it was held good as a precatory trust, and an imperative direction.   The case of *Pierson* v. *Garnet*, 2 Bro. Ch. 38, one of those cited by the learned solicitor, is an illustration.   There Peter Pierson was to receive the whole of the residue of the interest and profits, with full benefit of any annuities that might cease during his life.   He then goes on: "And from and after the death of said annuitants, I bequeath the residue to the said Peter."   Could anything be plainer than that this gift might be more or less diminished or increased by the time it reached the second taker?   What can be more uncertain than profits?   Yet it was held a trust, and the words

imperative. So in *Malim* v. *Keighley*, 2 Ves. Jr. 333, the bequest is, " in case the whole of the residue of my personal estate shall become vested in any one of my said daughters." Both the subject and the object are in some degree uncertain, yet it was held a trust.

*Horwood* v. *West*, 1 Sim. & Stu. 387, is to the same effect. There the subject was " ready money, money at interest, household furniture, stock in trade, plate, linen, china," etc. Yet this was held to be certain enough, and that the word "recommend," etc., created a trust.

So also *Knight* v. *Knight*, 3 Beav. 148. In this case the court says, on page 173, that, if necessary, it will ascertain what the residue is. It is true that the bill in that case was dismissed, but not because the whole residue was not given ; but because it was not clear that the words were intended to be imperative ; nor certain what subject was intended to be effected; nor what interests were to be enjoyed. But in the same case the rule in respect to precatory trusts is recognized ; and it is added that in simple cases there is no difficulty in its application. But that was a very complicated case, and the master of the rolls says that he was inclined " at different times to different conclusions," " and that the result to which he finally arrived was attended with much doubt and hesitation." Farther on he says he could not decide whether the testator meant to include both real and personal estate ; or what he got from his grandfather as well as his own acquisitions. Yet this case is relied on as supporting the complainant's contention.

The case of *Wright* v. *Atkyns*, 17 Ves. Jr. 255, another case cited by the respondent's solicitor, is really a strong case in our favor. The estate was large and consisted of both real and personal property, and was devised to the testator's mother and her heirs forever.

The precatory words were, " in the fullest confidence

that after her decease, she will devise the property to my family." It was a bill filed by those claiming by virtue of the above clause, to prevent the cutting of the timber, and against the first taker during her own life. She was not absolutely restrained from cutting the timber, but was ordered to give security for the proceeds or to bring the money into court so that it might be safe for whoever should be ultimately entitled. It is worthy of note in this case there was no direction in the will to sell and invest as there is in the will now before the court; yet it was held a trust.

Our review of the English cases cited by the learned solicitor need go no farther. It will be found that all of them recognize the rule contended for by us, and that where any difficulty has arisen, it has been as to its application to the peculiar circumstances of each case ; and that where it has been held that no trust arose, the facts and circumstances leading to such conclusion were materially different from those existing in the case now before the court. So true is this, that not a single case has been produced or cited, where the facts were similar to ours, that the trust was not upheld.

That the same rule prevails in this country also appears from both the text-books and the cases cited. It is not necessary to review them. They are selected from a great number of authorities, and almost at random ; and include cases decided in the eastern and middle, western and southern States; and in some of them the facts are almost identical. One of them, *Harrison* v. *Harrison*, 2 Gratt. 1, 44 Am. Dec. 365, arose and was decided in Virginia, the State of the testator's domicil; and, upon similar facts, fully recognizes and enforces the principle contended for by these complainants. Recognizing the justice and propriety of the rule laid down by Williams on Executors, that the law of the domicil should govern

in the construction of wills, especially in a case of doubt,
if any should exist in the mind of the court, we have in-
voked that rule and asked it to be applied in this case.
It is true that the learned solicitor has tried to break the
force of that authority by citing later cases, decided by
the same court, which, he alleges, if they do not over-
rule it, modify and qualify it.  A critical examination of
these later cases, and the more critical the better for us,
will show first, that the case of *Harrison* v. *Harrison*
has never been overruled or its authority questioned.

In the case of *Rhett* v. *Mason*, 18 Gratt. 541, cited and
so largely commented on by the learned solicitor for the
respondent, the court, on page 566, expressly recognizes
the authority of *Harrison* v. *Harrison*.  In the other
cases cited and relied upon as weakening that authority,
the facts were so varient that the rule could not be ap-
plied.  Even a cursory examination of the facts will
convince any one of this.

In closing my observations, which have extended very
much beyond what was originally expected, but which
seem necessary in view of the importance and novelty of
the case now presented for the first time in this State;
and in view of the very able and exhaustive argument of
my very eminent and experienced brother, who has so
zealously presented the other side, seemed to require, I
will epitomize in a few sentences the conclusions to
which I have come and which I submit for the considera-
tion of the court:

1.  That the first and principal inquiry in the construc-
tion of wills is to find out what the testator intended.

2.  That when the intent is ascertained, it is the duty
of the court to carry it into execution.

3.  That courts of equity ought to and will use their
powers and functions to do this.

4.  That precatory words, such as " desire," " request,"

" recommend," " hope," " expectation," and so on, when used in a will, by one who has a right to command, are imperative in their nature and effect, and impose a trust upon the person to whom they are addressed in favor of the person to be benefited which a court of equity will execute.

5. That this has always been, and still is, the rule in England and most of the States in this Union.

6. That even in the few cases cited in this country, which seem to conflict with this old and well-established rule, it is admitted that if it appears from other expressions than the precatory words themselves, a trust was intended, it will be enforced.

7. That judged by the old and well-established rule the case now before the court is devoid of all difficulty, and is clearly with the complainants.

8. But, even if tried by what is called the new rule, the case is still with the complainants. First, because the devise or gift to Mrs. Bryan was not absolute and unqualified. No words of inheritance were used; nor executors or assigns named. It was purely personal. Secondly. She was authorized and directed to sell and to invest the money in good stocks or bonds; and for a special purpose, her support. All this proves that it was not the intention of the testator to give her the estate absolutely; and when he requests that the remainder shall go to the children of his brother Charles, the intention is still more clearly apparent; and the court is called upon to either give effect to his will by carrying out his intention, or to defeat it by defeating his intention.

THE CHANCELLOR.—An agreement between the solicitors for the plaintiffs and defendant respectively was filed in this cause before the argument thereof began, which is in the following words : " It is agreed by the so-

licitors for the complainants and defendants respectively, in order to save costs and expenses consequent upon taking testimony, that as if upon demurrer to so much of the complainant's bill as alleges that by the will of William A. Bryan, the gift to his widow, Mary R. Bryan, was upon an obligatory trust in favor of the complainants, it shall be first argued whether any such trust was by the said will created; and if it shall be finally determined that such trust was thereby created, then the parties shall be at liberty further to proceed in the cause and take testimony in support of their respective allegations of facts and go on to hearing."

The only question for me to decide, therefore, is, Was the gift to his widow, Mary R. Bryan, by William A. Bryan upon an obligatory trust in favor of the complainants?

That gift was as follows: "I give and devise to my wife, Mary R. Bryan, all of my estate both real and personal. And I do hereby authorize and direct my executrix hereinafter named, to sell my real estate as soon as it can be sold to advantage and to invest the money in good stocks and bonds. And I do request my wife if she should not require the whole of my estate as a support, that she will will at her death the remainder to the children of my brother, Charles A. Bryan, of Cecil County, Maryland. I do hereby constitute and appoint my wife, Mary R. Bryan, sole executrix to this my last will and testament, with the request to the court in which she may qualify that no security may be required of her and no appraisement be made of my estate."

This is the first case, so far as I know, in respect to what is called precatory trusts, which has come before the courts of Delaware for decision. I am not therefore embarrassed by authority here upon the subject.

The tendency of modern decisions, however, is, not to

extend the rule or practice, which from words of doubtful meaning deduces or implies a trust.

In the case of *Mussoorie Bank* v. *Raynor*, L. R. 7 App. Cas. 321, a man gave his widow the whole of his real and personal property, feeling confident " that she will act justly to our children, in dividing the same when no longer required by her." The privy council, in deciding in favor of the widow, expressed the opinion that " the current of decisions now prevalent for many years in the court of chancery shows that the doctrine of precatory trusts is not to be extended."

Lindley, *L. J.*, in a subsequent case, after quoting from the judgment in the case of *Mussoorie Bank* v. *Raynor, supra*, remarked : " I am very glad to say that the current has changed, and that beneficiaries are not to be made trustees unless intended to be so by the testator." But I am not going to enter into any extended argument in respect to the principles involved in the case.

The principles have been fully and ably discussed by the solicitors representing the parties plaintiff and defendant. Their arguments were marked by extraordinary research and ability.

I content myself therefore by simply saying that there is no precatory trust in the will of William A. Bryan in favor of the plaintiffs.

The subject of the gift claimed as precatory was not certain. The testator, William A. Bryan, gave and devised to his wife, Mary R. Bryan, all of his estate, both real and personal, after the payment of his debts, and only requested his wife if she should not require the whole of his estate, that she should will at her death, not the property devised to her, but the remainder, to the children of his brother, Charles A. Bryan, of Cecil County, Maryland.

There might be, or there might not be, any remainder of his estate which could be enjoyed after his wife's death by any person whomsoever.  A necessary ingredient or characteristic, therefore, in a precatory devise or gift is wanting in this case.  There was nothing that this court could have ordered impounded if application for that purpose had been made to it.

I must therefore decide, and I do so decide, that the gift to Mrs. Bryan was absolute and unconditional, and not upon an obligatory trust in favor of the complainants.

The bill of the complainants is therefore dismissed with costs.